

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

August 4, 2008

**BY ELECTRONIC FILING**

The Honorable Harold Baer, Jr.
United States District Judge
Southern District of New York
500 Pearl Street, Room 2230
New York, New York 10007

Dear Judge Baer:

      Re:    <u>United States v. Louis Rodriguez</u>
              07 Cr. 677

      The Government submits this letter in response to the defendant's sentencing memorandum.  For the reasons that follow, the Government believes that a sentence within the applicable Guidelines range of 41 to 51 months would be a reasonable and appropriate sentence.

## BACKGROUND

      As summarized in the Pre-sentence Investigation Report ("PSR") completed by the Probation Department, Rodriguez made two sales of cocaine to a New York City Police Department ("NYPD") undercover officer.  The first sale was for 300 grams of cocaine and occurred on October 18, 2006 and the second sale was for 160 grams of cocaine and occurred on December 6, 2006.  In an April 4, 2007 criminal complaint (the "Complaint"), Rodriguez was charged with two counts of selling controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).  Rodriguez was indicted for these offenses on July 28, 2007, and pled guilty to these offenses on March 13, 2008 before United States Magistrate Judge Michael H. Dolinger.  Your Honor accepted Rodriguez's guilty plea on or about March 27, 2008.

      As set forth in the PSR, the Probation Department calculated the applicable Guidelines range to be 41 to 51 months, and recommended a sentence of 46 months' incarceration on each count, to run concurrently.

## ARGUMENT

      In <u>United States v. Crosby</u>, 397 F.3d 103, 111-12 (2d Cir. 2005), the Second Circuit explained that, in light of <u>Booker</u>, district courts should engage in a three-step sentencing procedure.  First, the district court must determine the applicable Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make

The Honorable Harold Baer, Jr.
August 4, 2008
Page 2

relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." Id. at 112. Second, the district court must consider whether a departure from that Guidelines range is appropriate. Id. Third, the court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose. Id. at 113.

### A.     The PSR Correctly Computed the Applicable Guidelines Range

As Rodriguez concedes, the PSR accurately determined the applicable Guideline range. Pursuant U.S.S.G. § 3D1.2(d), counts 1 and 2 of the Indictment are grouped together. And, pursuant to U.S.S.G. § 2D1.1(c)(8), because the defendant is responsible for distributing 460 grams of cocaine, his base offense level is 24. The Government concurs that a three level decrease is appropriate pursuant to U.S.S.G. §§ 3E1.1(a) and (b), given Rodriguez's timely entry of a guilty plea. With a criminal history category of II, the defendant's applicable Guidelines range is 41 to 51 months. In addition, neither the defendant (with possible exception noted below) nor the Probation Department contends that any departures from the Guidelines range are appropriate.

### B.     A Sentence Within the Guidelines Range is Consistent with the Factors Set Forth in Title 18, United States Code, Section 3553(a)

18 U.S.C. § 3553(a) provides that the sentencing "court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations, including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the applicable range under the Guidelines; and (3) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant.

In sentencing, courts "may not presume that the Guidelines range is reasonable [but] must make an individualized assessment based on the facts presented." Gall v. United States, 128 S. Ct. 586, 596-97 (2007). Nevertheless, "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." United States v. Rita, 127 S. Ct. 2456, 2464-65 (2007); see also Kimbrough v. United States, 128 S. Ct. 558, 574 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'") (quoting Rita, 127 S. Ct. at 2464-65). To the extent a court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 128 S. Ct. at 597.

Here, a sentence within the applicable Guidelines range of 41-51 months is consistent with the factors set forth in Title 18, United States Code, Section 3553(a). There is no categorical reason to deviate from the applicable guidelines range. The sale of narcotics is a

The Honorable Harold Baer, Jr.
August 4, 2008
Page 3

serious offense. It feeds the addictions of its buyers and all too frequently results in violence. In addition, this is not Rodriguez's first brush with the law. Rather, he was convicted in 2004 of receiving stolen property in Massachusetts, and was convicted in December 2007 of committing money laundering. Similarly, this was not an isolated offense for Rodriguez, as he made two separate sales of cocaine to the NYPD undercover officer, which totaled close to half a kilogram of cocaine. Thus, a Guidelines sentence will reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct.

       In seeking a non-Guidelines sentence of 33 months, Rodriguez references the closeness of his family. The Government does not dispute that Rodriguez maintains a close relationship with his family, and that his incarceration has taken an emotional toll on Rodriguez and his family. Nevertheless, this often is the case with defendants who have families and are incarcerated, and should not result in a sentence below the applicable Guidelines range. Similarly, Rodriguez's suggestion that he only be sentenced based on his initial sale (for 300 grams of cocaine) is frivolous. Rodriguez elected to continue dealing with the undercover officer and should be penalized accordingly.

       The defendant also asks Your Honor essentially to "credit" him with eight months of imprisonment that he has served and for which he will not be credited by the Bureau of Prisons ("BOP"). By way of background, Rodriguez was initially detained on a state criminal charge (money laundering in the fourth degree), to which he pled guilty on April 11, 2007. Subsequently, a writ of habeas corpus ad prosequendum was obtained and Rodriguez was brought to federal court to answer the charges in the Complaint on April 24, 2007. Rodriguez has been in federal custody since, and was sentenced to time served on his underlying state money laundering charge on or about December 5, 2007.

       As an initial matter, Rodriguez appears correct that the BOP will not credit him with the time he spent in federal custody prior to being sentenced on his state offense.[1] It is well settled, for example, that a defendant is not "in custody" of the Attorney General for purposes of Title 18, United States Code, Section 3585, and that a federal sentence does not begin to run, where a defendant in state custody is produced in federal court pursuant to a writ of habeas corpus ad prosequendum. See United States v. Fermin, 252 F.3d 102, 108 n.10 (2d Cir. 2001); Roche v. Sizer, 675 F.2d 507, 509-10 (2d Cir. 1982). Instead, the state retains primary jurisdiction over the defendant, who is deemed to be on loan from the state. See Rosario v. United States, No. 02 Civ. 3360(HB), 2004 WL 439386, *5 (S.D.N.Y. March 9, 2004); Pena v. United States, No. 01 Civ. 11395 (WHP), 2003 WL 22387127, *3 (Oct. 20, 2003)(defendant "not entitled to seven months credit on his federal sentence -- the time between his writ to federal custody . . . and his sentencing . . . because he was taken into federal custody on a writ of habeas corpus ad

---

[1] The Government is attaching a document as Exhibit A entitled "Interaction Of Federal And State Sentences When The Federal Defendant Is Under State Primary Jurisdiction." This white paper was prepared by Henry J. Sadowski, Regional Counsel, Northeast Region, Federal Bureau of Prisons, and is publicly available at www.bop.gov/news/ifss.pdf

The Honorable Harold Baer, Jr.
August 4, 2008
Page 4

prosequendum"); Miller v. United States, 826 F. Supp. 636, 638 (N.D.N.Y. 1993).

Further, the federal sentence for a prisoner produced on a writ does not commence until the state relinquishes jurisdiction of the defendant on the satisfaction of the state proceedings. See, e.g., Miller, 826 F. Supp. at 638 n.6; Exhibit A at 2. It appears that Rodriguez is making these arguments in light of the factors enumerated under Title 18, United States Code, Section 3553(a). In addition, 18 U.S.C. § 3585(b) permits the Bureau of Prisons to allow credit, under certain circumstances, for time spent in official detention "that has not been credited against another sentence" (emphasis added); see also United States v. Wilson, 503 U.S. 329, 337 (1992) ("Congress has made clear that a defendant could not receive double credit for his detention time."). Thus, BOP will not credit Rodriguez with the approximate eight month period of time that he spent in federal custody from April 24, 2007 to December 5, 2007, as Rodriguez was in federal custody during this period pursuant to a writ of habeas corpus ad prosequendum, and given that this approximate eight month period has already been credited towards Rodriguez's state sentence.

As a result, Rodriguez argues that a non-Guidelines sentence is appropriate. To the extent Rodriguez is seeking a downward departure from the applicable Guidelines range, or requesting that the commencement of the service of his federal sentence be "backdated," these arguments should be rejected. The Second Circuit has consistently held that a district court may not backdate or otherwise adjust a federal sentence so that it runs concurrent with an already-discharged portion of another sentence. See United States v. Los Santos, 283 F.3d 422, 427 (2d Cir. 2002) (reversing grant of downward departure that, in part, was designed to credit defendant for time spent in federal custody while serving state sentence, noting that "credit for time spent in federal custody is to be handled by the [Bureau of Prisons], and not the sentencing court," and finding that such a departure would "effectively double-credit[ ]" defendant for the time served) (collecting cases); United States v. Fermin, 252 F.3d 102, 109-110 (2d Cir. 2001) (affirming decision of district court to deny requests for "adjustment" of federal sentence or downward departure to account for time served in state custody); United States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir. 1998) (remanding for resentencing, concluding that district court "lacked authority to grant [the defendant] sentencing credit, whether by backdating the commencement of sentence, or by ordering that such credit be given, or by seeking to make the instant sentence retroactively concurrent with his previously discharged state sentence").[2]

---

[2] In Los Santos, 283 F.3d at 428, the Second Circuit recognized that a downward departure under Section 5K2.0 may be appropriate in certain cases where prosecutorial delay causes the loss of an opportunity for concurrent sentencing. To support such a departure, however, "the delay must either have been in bad faith or have been longer than a reasonable amount of time for the government to have diligently investigated the crime involved such that the delay takes the case out of the heartland." Id. at 428-29. Neither of these factors are present here, and Rodriguez does not argue otherwise. Indeed, Rodriguez was charged with this federal offense a mere three months after he was arrested on his state charge and prior to his being sentenced on that state charge.

The Honorable Harold Baer, Jr.
August 4, 2008
Page 5

      Similarly, these facts do not warrant a non-Guidelines sentence until Title 18, United States Code, Section 3553(a).  The offenses for which Rodriguez were sentenced at the federal and state level are separate and distinct.  In addition, based on conversations with the Queens County District Attorney's Office, it appears that Rodriguez pleaded guilty to the money laundering charge in April 2007 with the understanding that he would be sentenced to one year incarceration.  When he was sentenced by the State in December 2007, he was sentenced to time served, which amounted to less than the one year term of incarceration he was promised.  As a result, the time Rodriguez spent in custody from his state arrest until his state sentence was necessarily credited towards the service of his state sentence, and should not also be credited towards Rodriguez's federal sentence.  Indeed, to hold otherwise would essentially be an end-run around 18 U.S.C. § 3585(b) and the cases cited above.  Accordingly, the defendant should not be sentenced to a term of imprisonment less than the Guidelines range set forth in the PSR, notwithstanding the federally uncredited eight months he has already spent in custody.

## CONCLUSION

      For the foregoing reasons, the Court should sentence the defendant to a sentence within the Guidelines range set forth in the PSR.

      Respectfully submitted,

      MICHAEL J. GARCIA
      United States Attorney

By:    _____/s/_____
      Christopher LaVigne
      Assistant United States Attorney
      212.637.2325

cc:    Jeffrey G. Pittell, Esq. (via electronic notification)